Elizabeth Waldow
Legal Officer
NATIONAL PARK SERVICE
Law Enforcement Office
P.O. Box 517
Yosemite, California   95389
Telephone: (209) 372-0243

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 6:06-mj-0120 WMW |
| | ) | |
| Plaintiff, | ) | GOVERNMENT'S RESPONSE |
| | ) | TO DEFENDANT'S MOTION |
| v. | ) | TO SUPPRESS EVIDENCE; |
| | ) | DEFENDANT'S REQUEST FOR |
| | ) | EVIDENTIARY HEARING |
| | ) | |
| AMMON J. McNEELY, | ) | Date: November 20, 2006 |
| | ) | Time: 10:00 a.m. |
| Defendant. | ) | Courtroom: U.S. Magistrate |
| | ) | Honorable: |
| | ) | William M. Wunderlich |
| | ) | |

The United States, by and through its representative,

Elizabeth Waldow, Legal Officer for the National Park Service

in the Eastern District of California, hereby responds in

opposition to the Defendant's Motion to Suppress Evidence and

Request for Evidentiary Hearing. Defendant argues that the

ranger did not have reasonable suspicion to stop the

Defendant's vehicle. The Defendant's Motion attempts to raise

questions of fact and it would be inappropriate to rule on the

Motion under Federal Rules of Criminal Procedure Rule 12(b)(2)

because the trier of facts determination would rule on an issue

of fact to be heard at trial. Hence, the Defendant's Motion

should be dismissed.

Further, this response is based upon the Memorandum of

Points and Authorities contained in this response.

## MEMORANDUM OF POINTS AND AUTHORITIES

### STATEMENT OF FACTS

On July 23, 2006, at approximately 7:30 p.m., Ranger Foster was on-duty and monitoring traffic along Southside Drive in Yosemite Valley and within the boundaries of Yosemite National Park. Ranger Foster was in a marked patrol car and stopped along the left side of the road in a pull-out and operating a Kustom Golden Eagle Radar unit. The portion of Southside Drive near the Geologic Exhibit Turnout is a two lane, one-way road with the flow of traffic moving in a eastward direction. Ranger Foster was stopped facing on-coming traffic. Traffic flow was moderate.

Ranger Foster saw a grey four-door Mercury driving eastbound on Southside Drive, in the right lane, and approaching his location at a high rate of speed. The grey Mercury was weaving side to side within the lane and the Ranger observed the headlights wobbling back and forth. Ranger Foster visually estimated the speed to be approximately 50 miles per hour ("mph"). The speed limit is posted as 35 mph along this portion of Southside Drive. The Kustom radar unit gave an audible alert and displayed a speed of 48 miles per hour. After the gray Mercury passed the Ranger's location he pulled out into the flow of traffic and drove in an easterly direction following the Mercury. The Ranger turned on the overhead emergency lights and pulled forward and into the right lane of traffic directly behind the grey Mercury. The grey car did not slow down immediately but within 15-30 seconds the car braked

hard and the front end dipped forward. The grey car abruptly swerved to the left and then swerved back to center and then reduced its speed to 25 mph, the posted speed limit was still 35 mph. The overhead emergency lights were still flashing on the patrol car and the grey car continued to drive for approximately one mile. The grey car passed two pullouts, one was paved and one was gravel, and then finally pulled over, braked hard, and stopped on the road shoulder.

Ranger Foster contacted the driver of the grey Mercury and identified him by his California driver's license as the defendant, Ammon McNeely. Ranger Foster observed that the defendant smelled of a strong odor of alcoholic beverage, had blood shot and watery eyes and appeared disheveled with his shirt buttoned into the wrong holes. The defendant stated that he had consumed "...three beers over several hours before leaving Tuolumne." Ranger Foster administered standardized field sobriety tests to the defendant and based upon the defendant's performance, the Ranger's observations, and the totality of the circumstances Ranger Foster placed the defendant under arrest for Driving While Under the Influence of Alcohol ("DUI"), DUI with a blood alcohol level .08% or above, and speeding.

Once the defendant was transported to the Yosemite Holding Facility he submitted to a breath test on the Alcotest 7410 and twice produced breath alcohol samples showing .19 grams per 210 liters of breath.

**ARGUMENT**

**A.    The Defendant's Motion Raises Questions of Fact, Thus Making it Inappropriate for the Court to Rule on the Motion.**

Rule 12(b)(2) of the Federal Rules of Criminal Procedure provides that it is appropriate for a party to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue."  In determining a motion to dismiss, the court must presume the truth of the allegations set forth in the charging document. United States v. Joon Kim, 184 F.Supp.2d 1006, 1009(N.D.CA. 2002).  "A motion to dismiss...cannot be used as a device for a summary trial of the evidence." United States v. Jensen, 93 F.3d 667, 669(9th Cir. 1996).  Although the court can make a determination on a motion to dismiss if it involves questions of law, the court may not make determinations that which would "invade the province of the ultimate finder of fact." United States v. Shortt Accountancy Corp., 785 F.2d 1448, 1452(9th Cir. 1986).

Here, the defendant is charged with violations of 36 C.F.R. 4.23(a)(1), 36 C.F.R. 4.23(a)(2), and 36 C.F.R. 4.21(c). The Motion to Dismiss is based upon Federal Defender Betz's declaration that he believes the defendant, Ammon McNeely, will attest that he was obeying all traffic laws prior to being stopped by Ranger Foster.  Mr. Betz states in his declaration that he has not yet spoken with the defendant. Whether the defendant was speeding and driving while under the influence of alcohol or drugs are factual issues which the Government will

1 prove at trial.

2      The statements of probable cause for the citations state
3 that the ranger observed: the defendant's vehicle operating at
4 48 miles per hour in a posted 35 miles per hour speed zone;
5 that the defendant was weaving within the lane; that while the
6 ranger was following the defendant's vehicle abruptly swerved
7 back and forth, braked hard and continued driving at 25 mph in
8 a 35 zone until finally stopping. When contacted by the ranger
9 the defendant was found to show signs and symptoms of driving
10 while under the influence of alcohol.

11      It will be a factual determination at trial whether the
12 defendant is guilty of the charged violations. The defendant
13 may not ask the court, by bringing a Motion to Dismiss, to rule
14 on the factual issues of this case. Therefore the court should
15 deny the Motion to Dismiss.

16   **B. The Stop of McNeely's Vehicle Was Based on Reasonable
     Suspicion and did not Violate the Fourth Amendment.**
17

18      A key concept of the Fourth Amendment is reasonableness
19 and the proper function of the Fourth Amendment is to protect,
20 not against all intrusions, but against intrusions which are
21 not justified in the circumstances or which are made in an
22 improper manner. United States v. Willis, 431 F.3d 709, 714(9th
23 Cir.2005); Florida v. Jimeno, 500 U.S. 248, 250(1991);
24 Schmerber v. California, 384 U.S. 757, 768(1966). The courts
25 have established that traffic stops are seizures and subject to
26 the Fourth Amendment's reasonableness requirement. United
27 States v. Arvizu, 534 U.S. 266, 273(2002); Delaware v. Prouse,
28 440 U.S. 648, 653-55(1970). Ranger Foster had reasonable

suspicion of criminal activity to stop McNeely's vehicle when
he observed his operation of a vehicle that was speeding, then
driving ten miles under the posted speed limit, weaving and
braking erratically. An officer's decision to stop an
automobile is reasonable when there is probable cause to
believe that a traffic violation has occurred. Whren v. United
States, 517 U.S. 806, 810(U.S. 1996). Probable cause exists
when, under the totality of the circumstances known to the
arresting officers, a prudent person would have concluded that
there was a fair probability the suspect had committed a crime.
United States v. Ortiz-Hernandez, 427 F.2d 567, 573(9th Cir.
2005). Here, the totality of the circumstances, including
Ranger Foster's training and experience, applied to the
observation of the defendant's driving behavior would allow a
reasonable officer to form a reasonable suspicion that there
was a violation of law.  This observation constitutes
reasonable suspicion and where there is reasonable suspicion an
investigatory stop is valid.  Terry v. Ohio, 392 U.S. 1(1968).
The court in United States v. Ferguson, 8 F.3d 385, 391(6th
Cir.1993) held that so long as the officer has probable cause
to believe that a traffic violation has occurred or was
occurring, the resultant stop is not unlawful and does not
violate the Fourth Amendment. The probable cause determination
turns on what the officer knew at the time he made the stop.
Id. At 391.  Because Ranger Foster observed the defendant's
speeding and driving behavior prior to his stop of McNeely's
vehicle the stop was objectively reasonable and based on
probable cause that a traffic violation had occurred.  A law

enforcement officer's decision to stop a vehicle which is
reasonably based on probable cause is valid and does not
violate the fourth amendment of the Constitution.  Terry v.
Ohio, 392, U.S. 1, 30(1968). Ranger Foster's observations
justified the traffic stop and met the reasonable and
articulable suspicion standard.

In Terry v. Ohio, 392 U.S. 1, 20 (1968) the court stated
that in evaluating the reasonableness of an investigatory stop,
courts should examine "whether the officer's action was
justified at its inception, and whether it was reasonably
related in scope to the circumstances which justified the
interference in the first place."   Once Ranger Foster
contacted McNeely while making his initial routine
investigation of the driver's traffic violations he noticed the
smell of alcohol on his person and subsequently observed
McNeely's watery and blood shot eyes.  McNeely's field sobriety
test and subsequent arrest for driving under the influence were
reasonably related in scope to the circumstances which
justified the interference in the first place.  The stop of
McNeely's vehicle was reasonable and did not violate the Fourth
Amendment to the United States Constitution.

C.   **The Evidence was Seized as a Result of a Lawful Stop and**
     **is Allowable.**

Evidence obtained during a valid investigatory stop is
admissible and should not be suppressed.  Ranger Foster's
initial stop of McNeely's vehicle was a valid investigatory
stop as argued *supra*.  Thus, United States v. Twilley, 222 F.3d

1092 (9th Cir. 2000) does not apply because the stop did not violate the Fourth Amendment, hence, the evidence that was discovered as a result of that stop is not subject to suppression, the "fruit of the poisonous tree" doctrine does not apply, and all evidence obtained as a result of the stop is admissible.

### CONCLUSION

Defendant's Motion to Dismiss does not raise a legal issue for the determination of the court, but merely seeks the Court's determination of a factual matter and so the defendant's Motion to Suppress Evidence and Request for an Evidentiary Hearing should be denied.

Further, Ranger Foster had probable cause to believe that the defendant had violated traffic codes and he had reasonable and articulable suspicion that McNeely was operating a motor vehicle while impaired and under the influence of alcohol or drugs.  Therefore the traffic stop is reasonable under the Fourth Amendment and the evidence thereby discovered admissible and for the foregoing reasons the defendant's Motion to Suppress Evidence should be denied.

Respectfully submitted,

Dated: October 31, 2006

/s/ Elizabeth Waldow
Elizabeth Waldow,
Legal Officer
National Park Service